# RECORD NOS. 21-1753(L), 21-1765 (XAP)

In The

# United States Court Of Appeals
# For The Fourth Circuit

## CHANDRA BALDERSON,

*Plaintiff – Appellee/Cross-Appellant,*

v.

## LINCARE INC.,

*Defendant – Appellant/Cross-Appellee,*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WEST VIRGINIA
AT CHARLESTON

———————

## REPLY BRIEF OF APPELLEE/CROSS-APPELLANT

———————

**J. Zak Ritchie**
**Ryan McCune Donovan**
**Andrew C. Robey**
**HISSAM FORMAN DONOVAN RITCHIE PLLC**
**P.O. Box 3983**
**Charleston, WV 25339**
**(681) 265-3802** *office*
**(304) 982-8056** *fax*

*Counsel for Appellee/Cross-Appellant*

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES ................................................................................ ii

ARGUMENT ........................................................................................................ 2

    I.    The District Court erred as a matter of law by accepting only evidence that Lincare "could have" terminated Balderson based on the supposed omission—rather than evidence that it "would have." ........... 2

    II.   Disclosure of the probationary period was not required by Lincare's application. ..................................................... 9

CONCLUSION .................................................................................... 12

CERTIFICATE OF COMPLIANCE ..................................................... 13

i

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Alvarez v. Lynch*,
    828 F.3d 288 (4th Cir. 2016) ....................................................................... 10

*Balderson v. Lincare Inc.*,
    No. 2:19-CV-00666,
    2020 WL 6051266 (S.D. W. Va. Oct. 13, 2020) ...................... 1, 9, 11

*Bartels v. Saber Healthcare Grp., LLC*,
    880 F.3d 668 (4th Cir. 2018) ...................................................................... 6, 7

*Dotson v. Pfizer, Inc.*,
    558 F.3d 284 (4th Cir. 2009) .......................................................................... 7

*McKennon v. Nashville Banner Pub. Co.*,
    513 U.S. 352 (1995) ................................................................................. 2, 3

*Russell v. Microdyne Corp.*,
    65 F.3d 1229 (4th Cir. 1995) ......................................................................... 6

Following the close of discovery, the District Court issued a well-reasoned memorandum opinion in which it correctly analyzed the elements of Lincare's after-acquired evidence defense, finding them unmet based on the record. *See Balderson v. Lincare Inc.*, No. 2:19-CV-00666, 2020 WL 6051266, at *8–9 (S.D. W. Va. Oct. 13, 2020). In the trial that followed, the evidence relevant to Lincare's defense did not change.[1] Nonetheless, as Ms. Balderson explained in her cross-appeal, the court inexplicably reversed itself in its bench opinion, misapplying the after-acquired evidence doctrine to drastically limit Balderson's lost-wage damages.

The District Court based its erroneous conclusion on evidence that Lincare "could have" terminated Ms. Balderson based on after-acquired evidence. This is contrary to not only the District Court's prior opinion but contradicts clear Supreme Court instruction. For Lincare to have met its burden to invoke the defense, it must have proved that Balderson's "wrongdoing was of *such severity* that the employee in fact

---

[1] Lincare appears to suggest that the relevant evidentiary record changed from the close of discovery to trial, so as to downplay the Court's prior ruling. But, tellingly, Lincare never says *how* it changed. *See* Cross-Appellee Br. at 58. Balderson's point stands unrebutted.

1

*would have* been terminated on those grounds alone if the employer had known of it at the time of the discharge." *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 362–63 (1995) (emphasis added). Lincare presented no such evidence, and the District Court's conclusion otherwise resulted from misapplication of the legal standard. Lincare's response rests principally on its post-hoc mischaracterization of evidence showing only that it "could have" terminated Balderson—not that it "would have," as *McKennon* clearly requires. Lincare simply failed to put on such a case, as was their burden. A careful reading of the record and *McKennon*'s rule confirms the error of Lincare's argument and reveals a discrete error in the District Court's order.

Accordingly, this Court should reverse the District Court's judgment regarding its misapplication of the after-acquired evidence doctrine and affirm the judgment in all other respects.

## ARGUMENT

**I.    The District Court erred as a matter of law by accepting only evidence that Lincare "could have" terminated Balderson based on the supposed omission—rather than evidence that it "would have."**

Though the District Court correctly articulated the after-acquired evidence doctrine, it failed to properly apply it. In particular, the

2

District Court sustained Lincare's after-acquired evidence defense based *exclusively* on evidence that Lincare "could have" terminated Balderson based on a supposed omission in her employment application. JA 1136–39. But whether Lincare *could have* terminated Balderson is only a threshold inquiry—necessary, but not sufficient, to establish the defense. The critical inquiry is whether Lincare *would have* terminated Balderson for the supposed omission, as *McKennon* and this Court's subsequent precedent clearly requires. Even if the District Court correctly apprehended the rule, its conclusion was clearly erroneous because the record lacks any proof that Lincare *would have* terminated Balderson. That omission of evidence—*Lincare's* omission—is fatal to their defense.

Lincare's main response is to *mischaracterize* evidence showing only that it "could have" terminated Balderson to mean that it "would have." Lincare asserts that its "corporate representative testifie[d] that Lincare would have terminated [Balderson] for lying on her application." Cross-Appellee Br. at 53. But at no point in its response does Lincare *actually direct* this Court to any such testimony in the record. That's because there is none.

3

Lincare instead redoubles its efforts to prove that a misrepresentation in the application process is a terminable offense—a point that, as noted, is a necessary but not sufficient threshold inquiry that Balderson has never disputed.[2]

For instance, Lincare notes that its corporate representative testified that "lying on an application" is "considered a serious infraction and relevant to immediate termination at whatever time that would be discovered." Cross-Appellee Br. at 53, 55 (internal quotations omitted). But that testimony confirms that such an infraction is only *relevant to* the decision to terminate, not dispositive of it. *See* JA 1021.

Next, Lincare argues that its corporate representative was "unequivocal" that the omission "is considered serious enough to result in immediate termination." Cross-Appellee Br. at 55 (internal quotations omitted). But the referenced testimony only suggests that

---

[2] Deflecting, Lincare instead advances several uncontested points and declares victory. Among the red herrings, Lincare spends several pages arguing that a misrepresentation or omission was a terminable offense. This point is not disputed. If an employment application contains false information, then Lincare's policies certainly provide for, among other disciplinary measures, termination. Lincare also expends considerable effort arguing that the omission was discovered only after Balderson's termination. This point, again, is not disputed.

4

the supposed infraction rises to a level *sufficient to* justify termination, which, again, is not in dispute. *See* JA 1021. Lincare further notes that, as stated in the employment application, a misrepresentation "*may* result in immediate termination." Cross-Appellee Br. at 55 (internal quotations omitted; emphasis added). But the operative word "may" underscores that termination is purely discretionary ("could")—not mandatory ("would"). *See* JA 671. Finally, Lincare claims that "such a misrepresentation would have been a Major Infraction, which the Handbook specifies *supports* immediate discharge." Cross-Appellee Br. at 55 (emphasis added). Again, Lincare only offers evidence that the supposed omission was of a terminable type. Lincare boldly claims that its "corporate representative testified that Lincare would have terminated her for [the omission]," yet it fails to direct this Court to any such testimony in the record. *Id*. at 49. This failure is telling—and fatal.

Because Lincare cannot point to any evidence that it would have indeed terminated Balderson, Lincare tries to improperly foist the burden of proof on Balderson. For example, Lincare argues that "Plaintiff cannot cite any reason why Lincare would have applied a

5

lesser punishment for her lying than termination." Cross-Appellee Br. at 56. Lincare likewise suggests that its employment application "expressly states that a misrepresentation of its contents can lead to immediate termination" and "no record evidence suggests that Lincare ever did or would have made an exception for this reason." Cross-Appellee Br. at 57 (cleaned up).

This argument, however, turns the burden of proof on its head, in direct contravention of Fourth Circuit precedent. *See Russell v. Microdyne Corp.*, 65 F.3d 1229, 1238 (4th Cir. 1995) (providing that the employer has the burden of proving its after-acquired evidence defense); *accord Bartels v. Saber Healthcare Grp., LLC*, 880 F.3d 668, 681 (4th Cir. 2018) (providing that "[t]he party asserting an affirmative defense bears the burden of proving it"). Because the decision to terminate was purely discretionary based on all the record evidence,[3] it was incumbent

---

[3] Under the Employee Handbook, major infractions or willful misconduct "may" result in discharge. JA 213. Indeed, under questioning by Chief Judge Johnston, Lincare's corporate representative *conceded* that she has discretion to administer discipline short of termination for corporate compliance policy violations. *See* JA 1007 (referring, for example, to the use of the template progress notes); *see also* JA 1008-09 (explaining that the purported "zero tolerance policy" is not actually a zero tolerance policy).

6

upon Lincare to prove that it would have exercised that discretion by terminating Balderson. *See id*. It clearly did not.

Having fallen short of its burden, Lincare now asks this Court to infer that Lincare would have terminated Balderson. But there is no evidence from which the District Court or this Court could even make such an inference. "In evaluating an after-acquired evidence defense, a court must look to the employer's actual employment practices and not merely the standards articulated in its employment manuals." *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 298 (4th Cir. 2009). Here, Lincare's application and related policies make clear that termination in such instances is purely discretionary. Lincare could have presented evidence showing that it had terminated other employees for substantively similar reasons—but for whatever reason, strategic or otherwise, *it did not*. It would be a much closer case had Lincare done so. At an absolute minimum, Lincare could have elicited testimony that it would have indeed terminated Balderson for the supposed omission. But it *didn't* even do that. At trial, Lincare's counsel *never asked* about—and Lincare never testified regarding—whether it would have terminated Balderson for the supposed omission.

To the contrary, when Ms. Balderson's counsel pointedly asked if the probationary period would have "necessarily led to [Balderson's] immediate termination," Lincare's representative testified only that, "[i]t *may have* led to her immediate termination by revealing the omission and that would be something that *would be discussed* internally, as I had previously testified." JA 1014 (emphasis added). And again, when asked if the omission would "necessarily lead" to Balderson's termination, Lincare's representative testified that "I think *it depends* on the facts and the review of those facts. If it was an omission versus a falsification, it still *would be reviewed internally*." JA 1014–15 (emphasis added). If Lincare itself refused to answer this critical inquiry—whether it would have indeed terminated Balderson—then there is no room for the District Court to have concluded so based on any *reasonable* inference.

In sum, the District Court misapprehended the legal standard because it allowed Lincare to satisfy its burden with only evidence that it "could have" terminated Balderson for the supposed omission. Reversal is thus warranted on this ground alone.

8

## II. Disclosure of the probationary period was not required by Lincare's application.

The District Court's application of the after-acquired evidence doctrine is reversible for a second, independent reason, to which Lincare barely responds. The District Court's conclusion was premised on a clearly mistaken fact—specifically, that the employment application required Ms. Balderson's disclosure of the Ohio Consent Agreement in the first place. The bench opinion is notably silent on this point. Yet, again, the District Court got this issue right the first time only two weeks before trial. *Balderson*, 2020 WL 6051266, at *9.

Here, there is no evidence in the record showing that the alleged omission by Ms. Balderson was an omission at all, and the District Court's prior finding on this point still stands unrebutted. *See id*. The prompt in Lincare's employment application is clear: applicants need only disclose "current restrictions or disciplinary actions." JA 392. At the time Balderson applied to Lincare, there were neither. On the one hand, the Consent Agreement demonstrates that there were never any restrictions against Balderson's license. JA 396. And on the other, there were no current disciplinary actions because the April

9

2019 Consent Agreement closed the matter prior to the October 2019 employment application. *Compare* JA 391–95 *with* JA 396–400.

Tellingly, at no point in its response does Lincare argue that there were ever *any* restrictions against Balderson's license. Lincare's silence amounts to forfeiture. *See Alvarez v. Lynch*, 828 F.3d 288, 295 (4th Cir. 2016). As to whether there were current disciplinary actions against Balderson's license, Lincare's response brief gives this argument only passing mention at best. Lincare suggests in a footnote that the section heading entitled "Agreed Disciplinary Conditions" in the Consent Agreement belies Balderson's argument that there were no current disciplinary actions against her license at the time she applied to Lincare. Cross-Appellee Br. at 52, n.37. Lincare offers no further argument or explanation for this undeveloped suggestion.

Lincare's silence highlights the specious nature of its claim that Balderson lied on her employment application in the first place. Either way, the terms of the Consent Agreement—not the section headings— define the nature and temporal scope of the Consent Agreement. But even if the section headings were read as substantive terms, the heading "Agreed Disciplinary Conditions" in no way speaks to the

temporal scope of the disciplinary action, which is the critical inquiry. The Consent Agreement was entered into for the express purpose of resolving the disciplinary matter and dispensing with any "further formal proceedings."[4] As a result of the April 2015 Consent Agreement, there were no "current" disciplinary actions pending against her license when she applied to Lincare in October 2015. *Compare* JA 391-95 *with* JA 396-400. And as Lincare has effectively conceded, there were no "current" restrictions against her license when she applied to Lincare.

Because Balderson's application was accurate, Lincare's after-acquired evidence defense should have failed for want of *any* misconduct in the first place. For this additional reason, the District Court's application of the after-acquired evidence defense is reversible error. *See Balderson*, 2020 WL 6051266, at *9.

---

[4] For example, the Consent Agreement provides that "In lieu of a hearing before the BOARD, MS. BALDERSON accepts and agrees to the terms and conditions of this agreement" and "[t]he BOARD enters into this Consent Agreement in lieu of further formal proceedings." JA 675. The Consent Agreement was, in essence, a plea agreement meant to bring closure to the matter.

11

## CONCLUSION

For the foregoing reasons, this Court should reverse and remand the District Court's judgment regarding the application of the after-acquired evidence doctrine, and affirm the judgment in all other respects.

Respectfully submitted,

/s/ J. Zak Ritchie
J. Zak Ritchie
Ryan McCune Donovan
Andrew Carver Robey
HISSAM FORMAN DONOVAN RITCHIE PLLC
P. O. Box 3983
Charleston, WV 25339
(681) 265-3802

*Counsel for*
  *Appellee/Cross-Appellant*

## CERTIFICATE OF COMPLIANCE

1. This document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

    This document contains 2,156 words.

2. This document complies with the typeface requirements because:

    This document has been prepared in a proportional spaced typeface using Microsoft Word in 14 point Century Schoolbook.

Dated: December 22, 2021        Respectfully submitted,

/s/ J. Zak Ritchie
J. Zak Ritchie
Ryan McCune Donovan
Andrew Carver Robey
HISSAM FORMAN DONOVAN RITCHIE PLLC
P. O. Box 3983
Charleston, WV 25339
(681) 265-3802

*Counsel for Appellee/Cross-Appellant*